**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JEROME WANT,

    Plaintiff,

    v.

                                 Civil Action No.:  RDB-22-1890

SAUNDRA JONES,
WAYNE JONES,
CITY OF HAGERSTOWN, MD.,
MICHAEL SABOL,
SALVATORE & MORTON,

    Defendants.

**MEMORANDUM OPINION**

On August 1, 2022, the Court received for filing the above-entitled complaint together with a motion to proceed in forma pauperis, which the Court now grants.  For the reasons stated below, the complaint must be dismissed.

Self-represented Plaintiff Jerome Want is suing his landlord Saundra Jones, her son Wayne Jones, the city of Hagerstown, Maryland, city housing inspector Michael Sabol, and the law firm that represented the city of Hagerstown in prior civil actions, Salvatore & Morton.  Mr. Want asserts that the apartment he rents from Saundra Jones is in a state of disrepair.  Specifically, he claims there are two holes in the bathroom floor which have not been repaired despite his repeated complaints; a toilet from an apartment on the floor above his leaked through the ceiling into his apartment three times and neither Saundra Jones nor Wayne Jones would clean Mr. Want's apartment; the wooden floors in the apartment are very dirty and the landlord will not have them cleaned professionally, and there are holes on the outside of the building which allow mice to enter the apartment.  ECF No. 1 at 1-15.  Mr. Want faults the defects in his apartment for a recent partial

amputation of his foot.  In Mr. Want's view, he is entitled to a refund on his rent for each day the landlord has failed to make requested repairs.  *Id.* at 15.  Additionally, Mr. Want seeks monetary damages of 3.5 million dollars against Ms. Jones; 1.5 million dollars against Mr. Jones; 8 million dollars against the city of Hagerstown and Michael Sabol; and 5 million dollars against the law firm of Salvatore & Morton.  *Id*. at 15-20.

Mr. Want alleges that Ms. Jones is liable for these damages because she breached a contract when she failed to make repairs in violation of Maryland law; violated "the Maryland and Federal version of the ADA" and FHA for failing to make proper plumbing repairs and failing to clean up "feces and urine" that leaked into Mr. Want's apartment from three different plumbing-related "floods;" for committing fraud by demanding rent while repairs were not done; retaliation and intimidation due to the threats communicated through Mr. Jones to "get the f--- out of my mother's house;" malfeasance for failing to make the repairs; violating Mr. Want's right to privacy and freedom of speech[1] by secretly listening in to his private conversations and attempting to quell his speech by threatening eviction; and negligence in maintaining an unsafe rental property which led to the partial amputation of Mr. Want's foot.  ECF No. 1 at 15-17.

As to Wayne Jones, Mr. Want alleges Mr. Jones has engaged in harassment in violation of Maryland law when he shouted at Mr. Want to get out of his mother's house; fraud and malfeasance for misrepresenting that he had made repairs to the apartment; and retaliation by misrepresenting Mr. Want's actions after he reported Mr. Jones to the city.  *Id*. at 18.  Mr. Want alleges the city of Hagerstown breached a contract by failing to enforce its own codes; engaged in fraud when it failed to enforce building codes and its inspector lied about not seeing a crack in the bathroom floor; committed gross malfeasance by failing to enforce codes; committed gross

---

[1] There is nothing in the complaint leading this Court to believe that either Saundra Jones or Wayne Jones were agents of the State, a necessary element for a constitutional claim.

nonfeasance by failing to protect the public; failed to perform its required duties; and engaged in "tortious interference" with Mr. Want's ability to restart his business because it did not enforce the code. *Id*. at 18-19.  Mr. Want alleges identical claims against Michael Sabol, who is employed by the city of Hagerstown. *Id*. at 19.  Lastly, Mr. Want alleges that attorneys from the law firm of Salvatore & Morton "handed in" a defamatory letter during proceedings concerning the rental property where Mr. Want lives when the matter was litigated in both the State district and circuit courts. *Id*. at 20.

As noted, Mr. Want filed this complaint in forma pauperis pursuant to 28 U.S.C. § 1915(a)(1), which permits an indigent litigant to commence an action in this Court without prepaying the filing fee.  To guard against possible abuses of this privilege, the statute requires dismissal of any claim that is frivolous or malicious or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).  This Court is mindful, however, of its obligation to liberally construe self-represented pleadings, such as the instant Complaint.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In evaluating such a Complaint, the factual allegations are assumed to be true. *Id*. at 93 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Nonetheless, liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim.  *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating a district court may not "conjure up questions never squarely presented.").  In making this determination, "[t]he district court need not look beyond the complaint's allegations . . . . It must hold the pro se complaint to less stringent standards than pleadings drafted by attorneys and must read the complaint liberally."  *White v. White,* 886 F. 2d 721, 722-723 (4th Cir. 1989).

In addition, this Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010); *see also Arbaugh v. Y&H Corp*., 546 U.S. 500, 506-07 (2006) (Fed. R. Civ. Proc. 12(b)(1) authorizes lack of subject-matter jurisdiction to be raised by a party or by a court on its own initiative at any stage in the litigation). Under the "well-pleaded complaint" rule, the facts showing the existence of subject matter jurisdiction "must be affirmatively alleged in the complaint." *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir.1999) (citing *McNutt v. Gen'l Motors Acceptance Corp*., 298 U.S. 178 (1936)). "A court is to presume, therefore, that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." *United States v. Poole*, 531 F.3d 263, 274 (4th Cir.2008) (citing *Kokkonen v. Guardian Life Ins. Co*., 511 U.S. 375, 377 (1994)). Moreover, the "burden of establishing subject matter jurisdiction is on . . . the party asserting jurisdiction." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010); accord *Hertz*, 599 U.S. at 96; *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010). This Court "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc*., 545 U.S. 546, 552 (2005).

Although Mr. Want generally cites two federal statutes, the Americans with Disabilities Act ("ADA") and the Fair Housing Act ("FHA") in connection with his claims, he does not allege sufficient facts to support either claim. The ADA was enacted in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(1), and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." *Id*. § 12101(b)(2). Title II of the ADA prohibits public entities, including "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local

government," *id*. § 12131(1), from discriminating "by reason of" disability against a "qualified individual with a disability." *Id*. § 12132.  Title I of the ADA prohibits discrimination against individuals with disabilities in employment.  *See id*. § 12111 *et seq*.  Title III applies to public accommodations.  *See id*. § 12181 *et seq*.  Title IV applies to telecommunications and Title V contains miscellaneous provisions.  Mr. Want does not identify which section of the ADA he is referring to in connection with his claim, but his landlord is not a public entity, *see* § 12131(1) (defining "public entity"), and his apartment is not a public accommodation, *see* § 12181(7) (defining "public accommodation").  Thus, Mr. Want's ADA claim fails.

Further, Mr. Want does not allege that there was discriminatory conduct by Ms. Jones in connection with leasing the property to him as a disabled person.  *See* 42 U.S.C. § 3601 *et seq*.  The FHA prohibits discrimination in rental housing or "in the provision of services or facilities in connection therewith" on the basis of race, color, religion, sex, national origin, familial status, or disability.  42 U.S.C. §§ 3604(a), (b).  The FHA makes it unlawful "to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap."  *Id.* § 3604(f)(1).  The statute defines discrimination to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  *Id.* § 3604(f)(3)(B).  Here, there is no allegation that Mr. Want's landlord refused to make reasonable accommodations in any rules or practices, and Mr. Want was not denied the opportunity to lease the apartment.  The FHA claim also fails.

At its core the complaint relies on alleged violations of Maryland State law.  While this Court has jurisdiction over such claims where diversity jurisdiction is established, Mr. Want cannot do so.  Diversity jurisdiction applies "where the matter in controversy exceeds the sum or value of

$75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a)(1).  "From the beginning of the diversity jurisdiction, the rule in actions commenced by plaintiffs in federal court has been that the citizenship of the parties at the time of commencement of the action determines whether the requisite diversity exists."  *Rowland v. Patterson*, 882 F.2d 97, 98 (4th Cir. 1989).  In *Athena Automotive, Inc. v. DiGregorio*, 166 F.3d 288, 290 (4th Cir. 1999), the Court explained: "Because diversity jurisdiction depends on the citizenship status of the parties at the time an action commences, we must focus our jurisdictional inquiry solely on that time."  Here, only one of the named Defendants resides outside of Maryland, defeating any basis for diversity jurisdiction.

Accordingly, by separate Order which follows, the complaint must be dismissed for lack of subject-matter jurisdiction.

\_\_8/9/2022_____ \_ 
Date

_____/s/_____ 
RICHARD D. BENNETT 
UNITED STATES DISTRICT JUDGE